# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 8, 2017 Session

# LINDA BEARD v. JAMES WILLIAM BRANSON, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Houston County**
**No. 1368      Robert E. Burch, Judge**
_____

**No. M2014-01770-SC-R11-CV – Filed August 30, 2017**
_____


We granted permission for this appeal to determine whether a surviving spouse who files a wrongful death lawsuit is acting as a legal representative of the decedent and whether a wrongful death lawsuit filed *pro se* by the surviving spouse is void *ab initio* based on the spouse's *pro se* status.  In this case, the decedent's surviving spouse filed a *pro se* wrongful death health care liability lawsuit shortly before the one-year statute of limitations lapsed.  After expiration of the limitations period, the spouse retained an attorney and filed an amended complaint.  In the ensuing discovery, the defendants learned that the decedent had two daughters, both of whom were statutory beneficiaries in the wrongful death action.  The defendants filed motions for summary judgment.  They argued that the spouse's initial *pro se* complaint was filed in a representative capacity on behalf of the decedent and the other statutory beneficiaries and that it was, therefore, void *ab initio*; thus, the filing of the amended complaint could not relate back to the date of the initial complaint, and the lawsuit was time-barred.  The trial court denied the summary judgment motions and permitted the amended complaint to relate back to the date of the initial *pro se* complaint.  It then conducted a jury trial; the jury found both defendants liable and awarded damages.  The defendant hospital appealed the denial of summary judgment.  Adopting the defendant's argument, the Court of Appeals reversed.  The plaintiff now appeals.  Under the plain language of Tennessee's wrongful death statutes, the decedent's right of action "pass[es] to" the surviving spouse upon the decedent's death, and the surviving spouse asserts the right of action for the benefit of himself and other beneficiaries.  Tenn. Code Ann. § 20-5-106(a) (2009 & Supp. 2016).  Consequently, we hold that the surviving spouse did not file the initial *pro se* complaint as the legal representative of either the decedent or the decedent's estate.  As we construe our wrongful death statutes, in filing the *pro se* complaint, the surviving spouse was acting to a large extent on his own behalf and for his own benefit pursuant to his right of self-representation.  Under the facts of this case, we hold that the initial *pro se* complaint

was not void *ab initio*, it served to toll the statute of limitations, and the trial court did not err in allowing the filing of the amended complaint to relate back to the date of the initial complaint. Accordingly, we reverse the decision of the Court of Appeals, affirm the trial court's denial of summary judgment, and remand to the Court of Appeals for consideration of the other issues that were properly raised on appeal but not addressed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the
Court of Appeals Reversed; Case Remanded to the Court of Appeals**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined.

Philip N. Elbert, James G. Thomas, and Jeffrey A. Zager, Nashville, Tennessee, for the appellant, Linda Beard.

David L. Johnson, Nashville, and James T. McColgan, III, and Sherry Fernandez, Cordova, Tennessee, for the appellee, Trinity Hospital, LLC.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

On September 13, 2004, Ruth Hartley ("the decedent") was admitted to Defendant/Appellee Trinity Hospital ("Trinity") in Erin, Houston County, Tennessee, for elective colon surgery. The surgery was performed by Defendant James William Branson, M.D. ("Dr. Branson").

After the surgery, the decedent developed medical complications. On September 28, 2004, after the decedent had endured several days of vomiting, diarrhea, and piercing abdominal pain, she was transferred by helicopter to Centennial Medical Center in Nashville, Tennessee, for emergency surgery. By the time she arrived, she was already in septic shock. The next day, during the surgery, the decedent went into cardiac arrest and died.

On September 12, 2005, with the statute of limitations looming, the decedent's surviving spouse, Denver Hartley, filed a *pro se* wrongful death health care liability lawsuit against Trinity and Dr. Branson (collectively, "defendants"). *See* Tenn. Code Ann. § 29-26-101, *et seq.* (Tennessee Health Care Liability Act). The *pro se* complaint listed Mr. Hartley as the plaintiff, "Individually and as the Surviving Spouse of Ruth Hartley, Deceased." Mr. Hartley signed it "as the Surviving Spouse of Ruth Hartley."

Although the complaint was actually prepared by an attorney who was informally assisting Mr. Hartley, it was signed only by Mr. Hartley and was not signed by an attorney.[1]

In the complaint, Mr. Hartley alleged *inter alia* that Trinity and Dr. Branson negligently failed to diagnose and treat the decedent's condition and that their breach of the standard of care caused his wife's death. The complaint included a request for damages on behalf of Mr. Hartley only; it did not mention any other surviving heirs of the decedent. It sought damages for the decedent's pain and suffering, the economic value of the decedent's life, Mr. Hartley's loss of consortium, funeral expenses, and other damages resulting from the defendants' negligence. *See* Tenn. Code Ann. § 20-5-113 (2009).

In November 2005, the defendants filed separate motions to dismiss Mr. Hartley's complaint pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure.[2] Both motions asserted that Mr. Hartley was not permitted to file this lawsuit *pro se.* Mr. Hartley's complaint, they claimed, was filed in a representative capacity on behalf of the decedent and, as a non-attorney, Mr. Hartley could not file a lawsuit for another in a representative capacity. The defendants contended that the filing of the complaint constituted the unauthorized practice of law by Mr. Hartley. As such, they argued, the *pro se* complaint was a nullity and therefore the trial court did not have subject matter jurisdiction over the case.

After both motions to dismiss were filed but before they were argued, Mr. Hartley formally retained an attorney, Philip N. Elbert, to represent him in this lawsuit. On February 15, 2006, Mr. Elbert filed a notice of appearance as legal counsel for Mr. Hartley.[3]

On February 27, 2006, Mr. Hartley, through counsel, filed a response opposing the defendants' motions to dismiss. The response explained that Mr. Hartley contacted Mr.

---

[1] Trinity does not dispute that the complaint was actually prepared by an attorney, rather than Mr. Hartley himself. In fact, Mr. Hartley's daughter, Linda Beard (the Appellant herein), testified in her June 2009 deposition that Mr. Hartley "couldn't read. He never went to school."

[2] Trinity filed its motion to dismiss on November 1, 2005, and Dr. Branson filed his motion on November 14, 2005. The two motions, while not identical, are similar in all relevant respects.

[3] The record reflects that Mr. Elbert advised Mr. Hartley before he filed an official notice of appearance as Mr. Hartley's lawyer. There is some indication that Mr. Elbert's name was on the summons that was served on the defendants. Also, on November 8, 2005, the trial court signed an order that was approved for entry by Mr. Elbert as the attorney for Mr. Hartley. The order was filed on January 6, 2006.

Elbert shortly before the one-year anniversary of his wife's death, but Mr. Elbert was unable to fully investigate the claim consistent with his ethical obligation before expiration of the limitations period. Consequently, Mr. Elbert assisted Mr. Hartley with the preparation and filing of his *pro se* complaint in order to prevent the cause of action from becoming time-barred while Mr. Elbert did his investigation of the claims. As to the motions to dismiss, Mr. Hartley argued in his response that they should be denied because, under Tennessee's wrongful death statutes, the decedent's cause of action passed to Mr. Hartley when she died. *See* Tenn. Code Ann. § 20-5-106(a) (2009 & Supp. 2016). Because the cause of action belonged to Mr. Hartley, the filing of the *pro se* complaint did not constitute the unauthorized practice of law. Mr. Hartley's response further maintained that, even if the appearance of counsel was deemed necessary, the formal notice of the appearance of Mr. Elbert as counsel cured any error and should relate back to the date of the initial complaint.

On March 2, 2006, Mr. Hartley filed an amended complaint signed by Mr. Elbert as Mr. Hartley's attorney of record. He also filed a second memorandum in opposition to Dr. Branson's motion to dismiss.

Soon thereafter, the trial court held a hearing on the defendants' motions to dismiss.[4] On July 3, 2006, the trial court entered an order denying both defendants' motions. In the order, the trial court held that Mr. Hartley was permitted to file the wrongful death action *pro se* because, under section 20-5-106, the decedent's cause of action passed to Mr. Hartley as the surviving spouse, and the decedent had no other statutory beneficiaries. *See* Tenn. Code Ann. § 20-5-106(a). The trial court reasoned that, "[w]hen there are statutory beneficiaries, the surviving spouse will be proceeding in a representative capacity on behalf of himself and any statutory beneficiaries," but because Mr. Hartley was the only beneficiary, he was representing his own interests and not proceeding in a representative capacity. Therefore, it held, Mr. Hartley was permitted to represent himself in the wrongful death action, and his initial complaint was not a nullity. Discovery ensued.

In the course of discovery, it was revealed that the decedent and Mr. Hartley had two adult daughters, Linda Beard and Tammy Veach. This new information prompted the defendants to file motions for summary judgment. The defendants asserted that, because Mr. Hartley was not the decedent's sole statutory beneficiary, he was asserting a wrongful death claim in a representative capacity on behalf of the other statutory beneficiaries.[5] As Mr. Hartley is not an attorney, the defendants argued, he was not

---

[4] The appellate record does not contain a transcript of that hearing.

permitted to represent the other beneficiaries. They again claimed that the initial complaint was a nullity and its filing did not toll the statute of limitations.

While the summary judgment motions were pending, Mr. Hartley, through counsel, filed a motion to amend the complaint "[o]ut of an abundance of caution" to add himself as a party plaintiff in a representative capacity on behalf of the decedent's children, should they elect to claim an interest in the lawsuit in the future. Both of the defendants responded by arguing that the motion to amend should not be granted because the original complaint was a nullity, so there was nothing to amend.

In November 2006, the trial court held a hearing on the motions for summary judgment.[6] In March 2007, the trial court entered an order denying the defendants' motions. It held that the initial *pro se* complaint was "partially proper" because, in addition to pursuing the claims of the other statutory beneficiaries, Mr. Hartley was pursuing his own claim under the wrongful death statutes:

> If a plaintiff is acting in a purely representative capacity, the filing of a complaint is a nullity. . . . In the case *sub judice* the plaintiff is pursuing his own claim and that of the children of the deceased. If he were pursuing his own claim, he would unquestionably have the right to proceed *pro se*. If he were pursuing only the claim of the children, he would not. Since the action necessarily contains both types of claims, it presents in the same action a claim which the court will entertain and one which it will not.

> The action, as filed, was partially proper. . . . In a wrongful death action, there is but one cause of action embracing the first and second classes of damages contemplated by T.C.A. § 20-5-113 . . . . The complaint stated a cause of action which the courts will recognize. One of the elements of damages in the cause of action contained in the complaint was improper. This may [be] cured by a proper amendment. The filing of the complaint therefore presented a claim which is sufficient to toll the statute of limitations.

---

[5] Trinity's motion for summary judgment was based primarily on Mr. Hartley's lack of expert testimony to support his claims of medical negligence. However, the argument in Dr. Branson's summary judgment motion regarding Mr. Hartley's alleged unauthorized practice of law was attributed to both defendants.

[6] The appellate record does not include a transcript of that hearing.

(Citations omitted). The trial court commented that it viewed this situation as similar to one in which a wrongful death claim is filed by an improper party. *See generally Chapman v. King*, 572 S.W.2d 925 (Tenn. 1978). In such a case, it noted, a court should liberally permit the addition or substitution of the proper party plaintiff pursuant to Rules 15.03 and 17.01 of the Tennessee Rules of Civil Procedure, even beyond the expiration of the statute of limitations. Accordingly, the trial court held that, even though Mr. Hartley's *pro se* pursuit of claims on behalf of other beneficiaries was improper, this defect could be "cured by proper amendment."[7] Therefore, the court held that the amended complaint would relate back to the filing date of the original *pro se* complaint. On that basis, it denied the defendants' motions for summary judgment.

In December 2008, Mr. Hartley passed away. A suggestion of death was filed, and the daughter of Mr. Hartley and the decedent, Appellant Linda Beard, was substituted as plaintiff pursuant to Rule 25.01 of the Tennessee Rules of Civil Procedure by agreed order. The other daughter of the decedent and Mr. Hartley, Tammy Veach, was not added as a plaintiff.

The trial court conducted a jury trial in this case, on May 28 through June 13, 2014.[8] The jury returned a verdict in favor of the plaintiff Ms. Beard and awarded total damages of $750,000: $500,000 for the physical pain and mental suffering of the decedent, $200,000 for Mr. Hartley's loss of consortium, and $50,000 for the children's loss of consortium. Liability was assessed 50% against Dr. Branson, 40% against Trinity, and 10% against non-party radiologist Stanley Anderson, M.D. Trinity was deemed vicariously liable for the conduct of Dr. Anderson because he was an agent of the hospital.[9]

The trial court entered a final judgment on the verdict, in which it awarded Ms. Beard damages against Dr. Branson in the amount of $300,000 and damages against Trinity in the amount of $450,000. The trial court also awarded Ms. Beard discretionary costs in the amount of $68,945.85. Trinity filed a motion for a directed verdict or, alternatively, for a new trial, which the trial court denied. Trinity appealed, but Dr. Branson did not.

---

[7] The trial court noted that it had not yet ruled on Mr. Hartley's motion to amend the complaint to add counsel.

[8] Notably, the trial took place almost ten years after the alleged malpractice and almost nine years after this lawsuit was filed.

[9] For more details regarding Trinity's vicarious liability for the conduct of Dr. Anderson, see the Court of Appeals decision, *Beard v. Branson*, No. M2014-01770-COA-R3-CV, 2016 WL 1292904, at *2 & n.3 (Tenn. Ct. App. Mar. 31, 2016), *perm. app. granted* (Tenn. Sept. 22, 2016).

The Court of Appeals reversed the trial court's decision.  It held that the trial court erred in declining to grant summary judgment in favor of Trinity based on the expiration of the statute of limitations.  *Beard v. Branson*, No. M2014-01770-COA-R3-CV, 2016 WL 1292904, at *8 (Tenn. Ct. App. Mar. 31, 2016), *perm. app. granted* (Tenn. Sept. 22, 2016).  The Court of Appeals reasoned that Mr. Hartley "never had 'his own individual claim' to assert in this case" because Mr. Hartley and the other survivors "were only permitted to assert the cause of action in a representative capacity on behalf of the decedent."  *Id.* at *6 (quoting *Ki v. State*, 78 S.W.3d 876, 880 (Tenn. 2002)).  Because "litigants may not appear in a representative capacity on behalf of others without an attorney," the intermediate appellate court held, the filing of the initial *pro se* complaint on behalf of the decedent constituted the unauthorized practice of law.  *Id.*  On this basis, it held that Mr. Hartley's initial complaint was a nullity and must be "treated as if it never existed."  *Id.* at *8.  By the time a proper complaint was filed by counsel of record, the appellate court stated, the statute of limitations on the wrongful death claim had expired.  *Id.* at *7.  It held that the amended complaint did not relate back to the date of the initial *pro se* complaint under Rule 15.03 of the Tennessee Rules of Civil Procedure[10] because the initial complaint was a nullity and therefore did not operate to toll the statute of limitations.[11]  *Id.* at *7-8.  Accordingly, the Court of Appeals reversed the trial court's decision with respect to Trinity and remanded for the trial court to dismiss all claims against that defendant.  *Id.* at *8.

On April 26, 2016, the Court of Appeals issued a separate decision denying Ms. Beard's petition to rehear.  In doing so, the Court of Appeals reaffirmed its holding that the initial *pro se* complaint filed by Mr. Hartley was void, not voidable, and consequently it did not toll the statute of limitations.  *Beard v. Branson*, No. M2014-01770-COA-R3-CV, 2015 WL 1705290, at *1-2 (Tenn. Ct. App. Apr. 26, 2016) ("[W]e respectfully disagree with the notion that a void complaint, one that is a nullity, can be remedied."), *perm. app. granted* (Tenn. Sept. 22, 2016).

This Court granted Ms. Beard's application for permission to appeal.

---

[10] Rule 15.03 provides in relevant part:  "Whenever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."  Tenn. R. Civ. P. 15.03.

[11] The Court of Appeals rejected Ms. Beard's arguments that the amended complaint should be considered timely under either Rule 17.01 (permitting amendment to include the real party in interest) or Rule 11.01 (permitting unsigned complaint to be corrected promptly) of the Tennessee Rules of Civil Procedure.  *Beard*, 2016 WL 1292904, at *8.

STANDARD OF REVIEW

In this appeal, the plaintiff asks us to review the Court of Appeals' decision to reverse the trial court's denial of Trinity's motion for summary judgment.[12]  We review a lower court's decision on a summary judgment motion de novo with no presumption of correctness.  *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015) (citing *Parker v. Holiday Hospitality Franchising, Inc.*, 446 S.W.3d 341, 346 (Tenn. 2014)).  Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Tenn. R. Civ. P. 56.04.  Our standard of review requires "a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied."  *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2452 (2016).

In this case, the legal questions presented require us to interpret statutes. "Statutory interpretation, of course, presents a question of law and our review is de novo with no presumption of correctness."  *Kiser v. Wolfe*, 353 S.W.3d 741, 745 (Tenn. 2011) (citing *Carter v. Quality Outdoor Prods., Inc.*, 303 S.W.3d 265, 267 (Tenn. 2010)).

## ANALYSIS

We consider first whether a surviving spouse such as Mr. Hartley files a wrongful death lawsuit as the legal representative of the decedent.  As background, we will discuss briefly the unauthorized practice of law and the right of self-representation and then review Tennessee's wrongful death statutes and the accompanying caselaw.  After resolving whether Mr. Hartley filed the complaint as the representative of the decedent, we will then determine whether the *pro se* complaint was void *ab initio* and, thus, whether the trial court erred in denying Trinity's motion for summary judgment.

### A.  Right of Self-Representation

---

[12] In this case, Trinity appeals the denial of summary judgment after a trial on the merits.  "When the trial court's denial of a motion for summary judgment is predicated upon the existence of a genuine issue as to a material fact, the overruling of that motion is not reviewable on appeal when subsequently there has been a judgment rendered after a trial on the merits."  *Hobson v. First State Bank*, 777 S.W.2d 24, 32 (Tenn. Ct. App. 1989); *see also In re Estate of Blackburn*, 253 S.W.3d 603, 611 (Tenn. Ct. App. 2007).  In this case, however, the denial of summary judgment was not based on the existence of a factual dispute, so it is appealable.

At the outset, we note that "only licensed attorneys may engage in the 'practice of law' in Tennessee." *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 553 (Tenn. Ct. App. 2015) (citing Tenn. Sup. Ct. R. 7, § 1.01 and Tenn. Code Ann. § 23-3-103(a) (providing that the unauthorized practice of law is a Class A misdemeanor)); *see also* Tenn. Code Ann. § 23-1-108 (2009) ("No person shall practice law in this state without first receiving a license issued by the Tennessee supreme court and complying with Tennessee Supreme Court Rule 6 concerning admission to the practice of law . . . ."). "In Tennessee, the practice of law 'relates to the rendition of services for others that call for the professional judgment of a lawyer.'" *Vandergriff*, 482 S.W.3d at 553 (quoting *Petition of Burson*, 909 S.W.2d 768, 775 (Tenn. 1995)). "The preparation and filing of a complaint requires 'the professional judgment of a lawyer,' and is, therefore, the practice of law." *Old Hickory Eng'g and Mach. Co. v. Henry*, 937 S.W.2d 782, 786 (Tenn. 1996) (quoting *Petition of Burson*, 909 S.W.2d at 776) ("*Old Hickory*").

Nevertheless, a person who is not an attorney "may conduct and manage *the person's own case* in any court of this state" without violating the prohibition against the unauthorized practice of law. Tenn. Code Ann. § 23-1-109 (2009) (emphasis added). Importantly, this right of self-representation extends only to the individual's right to conduct and manage his or her *own* case; a non-attorney may not conduct litigation on behalf of an entity or another individual, because doing so would constitute the unauthorized practice of law. *Vandergriff*, 482 S.W.3d at 552 (quoting Tenn. Code Ann. § 23-1-109). For example, the parents of a minor child may not file a *pro se* complaint on behalf of their child, asserting the child's personal injury claims. *Id.* at 553 (explaining that, "[w]hile Rule 17.03 allows a parent to 'sue' on behalf of a minor child, the rule does not authorize a parent to practice law while acting on behalf of the child"). Similarly, a non-attorney president of a corporation cannot file a lawsuit on behalf of the corporation; corporations are artificial entities, so for the president of a corporation to sign a complaint purely as the corporation's legal representative constitutes the unauthorized practice of law. *Old Hickory*, 937 S.W.2d at 786 ("[A] corporation cannot act *pro se* in a court proceeding nor can it be represented by an officer or other non-lawyer agent."); *see ELM Children's Educ. Trust v. Wells Fargo Bank, N.A.*, 468 S.W.3d 529, 533 (Tenn. Ct. App. 2014) (holding that a non-attorney trustee's signature on a notice of appeal was insufficient to confer appellate jurisdiction because "[a] trustee and a trust . . . are two separate entities" that "are not interchangeable"). *But see Bass v. Leatherwood*, 788 F.3d 228, 230 (6th Cir. 2015) (holding that, under federal law, a non-attorney beneficiary of an estate may represent the estate *pro se* if he is the sole beneficiary and the estate has no creditors).

The parties in this case do not dispute this general premise. The primary issue in this appeal is whether, under Tennessee's wrongful death statutes, Mr. Hartley's wrongful death case is his "own case" brought pursuant to his right to self-representation,

or whether it is brought in a representative capacity on behalf of either the decedent or the other statutory beneficiaries.  This is an issue of first impression.

### B.   *Tennessee's Wrongful Death Statutes*

This case requires us to interpret Tennessee's wrongful death statutes.  "In construing the wrongful death statutes, we must look to the legislative intent, which controls the construction of all statutes."  *Busby v. Massey*, 686 S.W.2d 60, 62 (Tenn. 1984).  This Court has explained:

> Our primary goal "is to carry out legislative intent without broadening or restricting the statute beyond its intended scope."  We presume that every word in a statute has meaning and purpose and that each word's meaning should be given full effect as long as doing so does not frustrate the General Assembly's obvious intention.  Words "'must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'"  When a statute's meaning is clear, we "'apply the plain meaning without complicating the task' and enforce the statute as written."

*Harris v. Haynes*, 445 S.W.3d 143, 146 (Tenn. 2014) (citations omitted).  In ascertaining the legislature's intent, "'[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning.'"  *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001) (quoting *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)).

Tennessee's wrongful death statutes form a patchwork of sorts.  "There are a number of wrongful death statutes which must be considered *in pari materia*."  *Gilliam ex rel. Gilliam v. Calcott*, Nos. E1999-02365-COA-R3-CV,  03A01-9904-CV-00133, 2000 WL 336503, at \*2 (Tenn. Ct. App. Mar. 30, 2000), *cited with approval in Kline v. Eyrich*, 69 S.W.3d 197, 206 n.9 (Tenn. 2002).

As noted by the Court of Appeals below, "[a] wrongful death cause of action did not exist at common law;" it is purely a creature of statute.  *Beard*, 2016 WL 1292904, at \*3 (citing *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 596 (Tenn. 1999)).  This Court in *Jordan* explained that, at early common law, actions for personal injuries terminated upon the victim's death.  *Jordan*, 984 S.W.2d at 596.  All states, including Tennessee, have abrogated the common-law rule, either judicially or by statute, so that a victim's right of action does not die with the victim.  *See Id.*

- 10 -

The statutory methods for abrogating the common-law rule vary significantly from state to state. Wrongful death statutes are generally characterized as either "survival statutes" or "purely wrongful death statutes." *Id.* at 597. We discuss each in turn.

True survival statutes "permit the victim's cause of action to survive the death, so that the victim, *through the victim's estate*, recovers damages that would have been recovered by the victim had the victim survived." *Id.* (emphasis added). "Survival statutes do not create a new cause of action; rather, the cause of action vested in the victim at the time of death is transferred to the person designated in the statutory scheme to pursue it, and the action is enlarged to include damages for the death itself." *Id.* (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 126, at 942-43 (5th ed. 1984)). Under survival statutes, the recoverable damages are those to which the decedent would have been entitled, such as lost wages, medical expenses, pain and suffering, and other injuries suffered by the victim. *Id.* In this way, under a true survival statute, the decedent's estate may recover all damages the decedent would have been entitled to recover during his or her life.

In contrast, purely wrongful death statutes "create a new cause of action in favor of the survivors of the victim for their loss occasioned by the death." *Id.* Such statutes generally seek to compensate "the individual beneficiaries for the loss of the economic benefit which they might reasonably have expected to receive from the decedent in the form of support, services or contributions during the remainder of [the decedent's] lifetime if [the decedent] had not been killed." *Id.* at 598 (quoting Prosser, § 127, at 949).

As described in *Jordan*, Tennessee's current wrongful death statutes have undergone "more than a century of piecemeal revision by the legislature and interpretation by the courts." *Id.* at 597. The end product is "a hybrid between the survival and wrongful death statutes, resulting in a statutory scheme with a 'split personality.'"[13] *Id.* at 598; *see also Jones v. Black*, 539 S.W.2d 123, 124 (Tenn. 1976) (noting that Tennessee's wrongful death statutes "are somewhat ambiguous" because they provide for damages measured by injuries to the decedent but also allow damages for injuries to the beneficiaries).

---

[13] While Tennessee has a single set of wrongful death statutes that have characteristics of both survival statutes and purely wrongful death statutes, some states have two separate statutory schemes, one comprised of survival statutes (for the decedent) and another comprised of pure wrongful death statutes (for the beneficiaries). *See, e.g.*, *Wilson v. Grant*, 258 P.3d 689, 691-92 (Wash. Ct. App. 2011) (noting that Washington has four separate causes of action for wrongful death and survival—two survival statutes that "preserve causes of action for injuries suffered prior to death" and two wrongful death statutes that create "a two-tier system of beneficiaries").

- 11 -

The "piecemeal" heritage of our wrongful death statutes is evident from the statutory language. The primary wrongful death statute, Section 20-5-106, first abrogates the common-law rule that the victim's right of action dies with the victim by stating that "[t]he right of action that a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer . . . shall not abate or be extinguished by the person's death." Tenn. Code Ann. § 20-5-106(a); *see id.* § 20-5-102 (2009) (listing the type of actions that do not abate upon the death of the victim and indicating that "the right of action shall pass in like manner as the right of action described in § 20-5-106"). Section 20-5-106(a) then provides that the right of action "shall pass to the [decedent's] surviving spouse and, in case there is no surviving spouse, to the [decedent's] children or next of kin" or to the decedent's "personal representative, for the benefit of the [decedent's] surviving spouse or next of kin." *Id.* § 20-5-106(a).

The next section of the wrongful death statutes describes who is entitled to bring the wrongful death action: "The action may be instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or, if there is no surviving spouse, by the children of the deceased or by the next of kin." *Id.* § 20-5-107(a) (2009 & Supp. 2016). Section 20-5-110 explains that a wrongful death suit "may be brought in the name of the surviving spouse for the benefit of the surviving spouse and the children of the deceased, in the name of the administrator of the deceased spouse or in the name of the next of kin of the spouse." *Id.* § 20-5-110(a) (2009 & Supp. 2016). It further provides that "[t]he surviving spouse may effect a bona fide compromise in such a suit or right of action and may execute a valid release that shall be binding upon all the children of the deceased or next of kin of the deceased." *Id.* § 20-5-110(b).

In sum, the statutes provide that the right of action that the decedent would have had, but for death, is not extinguished but instead passes to the surviving spouse or, if there is no spouse, to the decedent's children or next of kin. The personal representative may institute the wrongful death action, but he does so for the benefit of the spouse and/or the other statutory beneficiaries, not the decedent's estate. *Id.* § 20-5-106(a); *see Johnson v. Metro. Gov't Nashville & Davidson Cnty.*, 665 S.W.2d 717, 718 (Tenn. 1984) ("While an action for wrongful death, of course, may be instituted and maintained by an administrator, . . . it has long been settled that the administrator sues as a representative of the next of kin, and not as a representative of the estate or of creditors."); *Memphis St. Ry. Co. v. Cooper,* 313 S.W.2d 444, 448 (Tenn. 1958) ("The one who sues as administrator and recovers damages for the wrongful death of the decedent holds this recovery as a trustee for the real beneficiaries under the statute . . . .").

The so-called "split personality" of Tennessee's wrongful death statutes manifests in the damages provision:

> Where a person's death is caused by the wrongful act, fault or omission of another and suit is brought for damages, as provided for by §§ 20-5-106 and 20-5-107, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time and necessary expenses *resulting to the deceased* from the personal injuries, *and also the damages resulting to the parties for whose use and benefit the right of action survives* from the death consequent upon the injuries received.

Tenn. Code Ann. § 20-5-113 (emphases added). Thus, the statutory beneficiaries may recover both damages suffered by the decedent (like true survival statutes) and also damages suffered by the beneficiaries (like purely wrongful death statutes). "Hence, survivors of the deceased may recover damages for *their* losses suffered as a result of the death as well as damages sustained by the deceased from the time of injury to the time of death." *Jordan*, 984 S.W.2d at 598 (emphasis in original) (citing *Jones*, 539 S.W.2d at 124); *id.* at 601 (holding that consortium-type damages suffered by the beneficiaries may be included as an element of the pecuniary value of the decedent in a wrongful death action).

While the damages that are recoverable under Tennessee's statutes are the type that can be recovered in both survival statutes and purely wrongful death statutes, Tennessee's statutory designation of the recipients of the proceeds is more similar to purely wrongful death statutes. Under the Tennessee statutes, the damages awarded in a wrongful death lawsuit are "to be free from the claims of [the decedent's] creditors." Tenn. Code Ann. § 20-5-106(a); *id.* § 20-5-108(b) (2009) (noting that the damages in a lawsuit commenced by the decedent before the death "shall go to the surviving spouse and next of kin free from the claims of creditors"). Although the wrongful death statutes do not specify the manner of distribution of the proceeds, Tennessee's courts have consistently held that they pass to the statutory beneficiaries in accordance with the laws of intestate succession. *Kline*, 69 S.W.3d at 202 n.3; *Foster v. Jeffers*, 813 S.W.2d 449, 452 (Tenn. Ct. App. 1991); *see also Rickman v. Rickman*, No. M2013-00251-COA-R3-CV, 2013 WL 5656214, at *7 (Tenn. Ct. App. Oct. 15, 2013) ("Tennessee courts have determined that the proceeds from a wrongful death action should pass as if through intestate succession."). Thus, as in pure wrongful death statutes, any proceeds of the action go to the statutory beneficiaries, not to the decedent's estate.

Even though Tennessee wrongful death statutes have hybrid elements, they have been characterized as "survivor legislation" because they preserve whatever cause of action the decedent had at the time of death. *Jordan*, 984 S.W.2d at 598. For this reason,

we have consistently noted that, like true survival statutes, they do not create a new cause of action in the beneficiaries. Rather, the statutes' purpose "is to provide 'for the continued existence and passing of the right of action of the deceased, and not for any new, independent cause of action in [survivors].'" *Id.* (quoting *Whaley v. Catlett*, 53 S.W. 131, 133 (1899)); *see Ki*, 78 S.W.3d at 880 (noting that the wrongful death statutes do not contemplate more than one claimant because the cause of action being asserted is that which belonged to the decedent); *Kline*, 69 S.W.3d at 206-07 (holding that there is a single cause of action, the one that the decedent would have had, had he survived); *Lynn v. City of Jackson*, 63 S.W.3d 332, 336 (Tenn. 2001) (holding that the wrongful death statutes do "not create a new cause of action for the beneficiaries but instead preserve[] the right of action of the decedent"); *Hill v. City of Germantown*, 31 S.W.3d 234, 240 (Tenn. 2000) (emphasizing that the wrongful death statutes do not create a new cause of action in the beneficiaries); *Jones*, 539 S.W.2d at 125 (noting the "long and well-settled construction given to the Tennessee wrongful death statutes that they are to be treated as survival statutes rather than creating a new cause of action"); *see also Johnson v. Memphis Light, Gas & Water Div.*, 777 F.3d 838, 844 (6th Cir. 2015) ("Unlike 'pure' wrongful death statutes, Tennessee's wrongful death statute is a 'survival' statute—it preserves only the decedent's cause of action and does not create a new cause of action for beneficiaries.").

Under these statutes, the decedent's surviving spouse, if there is one, has "the prior and superior right above all others" to file the wrongful death action and control the litigation. *Foster*, 813 S.W.2d at 451. "Once the surviving spouse has asserted his or her right or priority, the statutes give to the surviving spouse complete 'control over the right of action until he or she waives that right.'" *Kline*, 69 S.W.3d at 207 (quoting *Estate of Baker ex rel. Baker v. Maples*, 995 S.W.2d 114, 115 (Tenn. Ct. App. 1999)). "As part of this right of control over the action, the surviving spouse is entitled to control the litigation and to hire the attorney or attorneys needed to prosecute the action." *Id.* "More importantly, however, the surviving spouse also has the discretion either to litigate the claim or to settle it in a manner that is binding upon the children." *Id.* (citing Tenn. Code Ann. § 20-5-110(b)).

If there is no surviving spouse, then the children have priority to bring the action; if no children survive, then the action passes to the decedent's next of kin.[14] *Foster*, 813 S.W.2d at 451 (citing Tenn. Code Ann. §§ 20-5-106, -107). "If none of these statutorily prescribed beneficiaries exist, then the cause of action cannot be brought, because the

---

[14] The personal representative's rank in the priority list "varies according to the beneficiaries," because the personal representative has no personal interest in the lawsuit but brings "the action for the benefit of the persons with the statutory priority." *Foster*, 813 S.W.2d at 452.

existence of one of these beneficiaries is a prerequisite to bringing an action for wrongful death." *Id.* (citing *Johnson*, 665 S.W.2d at 718).

### C. Whether Surviving Spouse Represents the Decedent

The Court of Appeals below held that the filing of the initial *pro se* wrongful death complaint constituted the unauthorized practice of law because Mr. Hartley necessarily filed the lawsuit in a representative capacity on behalf of the decedent. In doing so, it relied on cases indicating that Tennessee's wrongful death statutes do not create a new cause of action in the beneficiaries. *Beard*, 2016 WL 1292904, at *5.[15] To support its holding, the Court of Appeals quoted at length from this Court's decision in *Ki v. State*. *Id.* at *5-6.

In *Ki*, the parents of a student who died in a college dormitory fire filed a wrongful death claim against the State, alleging that the State's negligence caused the death of their son. *Ki*, 78 S.W.3d at 878. Because a Tennessee statute limits each "claimant" against the State to a recovery of $300,000 (*see* Tenn. Code Ann. § (2012 & Supp. 2016)), the parents argued that they were each a separate "claimant" for purposes of the statute. *Ki*, 78 S.W.3d at 879. For this reason, they contended, they should each be permitted to recover up to $300,000, for a total recovery of up to $600,000 for both parents together. This Court disagreed. Interpreting the wrongful death statute in conjunction with Section 9-8-307(e), the Court concluded: "[O]nly one right of action exists: the action that the decedent would have had, absent death, against the negligent wrongdoer." *Id.* The Court explained:

> The *decedent* is the sole party who holds a right of action or claim in a wrongful death suit. The decedent's survivors are only asserting the decedent's right of action *on behalf of the decedent*. Accordingly, because Tenn. Code Ann. § 20-5-106(a) creates one claim or right of action vested in the decedent, the decedent is the sole "claimant" in a wrongful death action.

*Id.* at 879-80 (emphases added) (citation and internal quotation marks omitted). The *Ki* Court went on to reject the parents' argument that the wrongful death statutes' provision

---

[15] The Court of Appeals stated: "[T]he Supreme Court has repeatedly held that the *claims* in a wrongful death case are held solely by the decedent and that the statutes do not create a new cause of action for the decedent's statutory beneficiaries." *Beard*, 2016 WL 1292904, at *5 (emphasis in original) (citing *Jones*, 539 S.W.2d at 124; *Lynn*, 63 S.W.3d at 335-36; *Ki*, 78 S.W.3d at 879-80).

for two types of damages—consortium-type damages to the survivors as well as damages for injuries to the decedent—had the effect of permitting more than one claimant in a wrongful death action. *Id.* at 880. The Court pointed out that, although the wrongful death statutes allow for consortium-type damages as an element of the pecuniary value of the decedent's life, those damages still "arise pursuant to the right of action vested in the decedent." *Id.* (citing *Kline*, 69 S.W.3d at 207). For these reasons, the Court held that there can be only one "claimant" in a wrongful death action for purposes of Section 9-8-307(e). *Id.*

In *Kline v. Eyrich*, two separate wrongful death actions were filed as a result of a fatal motorcycle accident—one by the decedent's spouse and another by the decedent's three children from a previous marriage. *Kline*, 69 S.W.3d at 202. Initially, the trial court consolidated the two actions and permitted the parties to proceed independently. It later held, however, that the surviving spouse was the "proper party . . . to prosecute the singular cause of action for the wrongful death of [the decedent] in all respects." *Id.* The trial court empowered the spouse to control the litigation, including the negotiation of a settlement agreement with the defendant. *Id.*

After the underlying lawsuit in *Kline* was settled, the trial court permitted payment of the spouse's attorney from the common fund. This had the effect of reducing the children's portion of the settlement by their share of the attorney's fees. *Id.* The children appealed, and this Court upheld the trial court's decision. It observed that the wrongful death statutes do not create any right of action in the beneficiaries "independently of that which the deceased would have had, had [he or she] survived," *id.* at 206-07 (citation omitted), and that the right of action is "single, entire[,] and indivisible," *id.* at 207 (citation omitted). The *Kline* Court further held that the wrongful death statutes give the surviving spouse the "prior and superior right above all others," *id.* (quoting *Foster*, 813 S.W.2d at 451), and the surviving spouse has complete control over the litigation, *id.* This control includes hiring "the attorney or attorneys needed to prosecute the action" as well as the discretion to either litigate the claim or settle it. *Id.* The children, the Court held, were passive beneficiaries who possessed "no privilege to employ separate counsel to protect their interests in receiving a share of the wrongful death proceeds." *Id.* "Clearly, [the] claim for loss of consortium does not, in any way, represent a claim for damages separate from the wrongful death action itself." *Id.* at 207-08. Instead, the claim for loss of consortium "embodies one component of the decedent's pecuniary value of life." *Id.* at 208; *see also Jordan*, 984 S.W.2d at 601 (holding "that consortium-type damages may be considered when calculating the pecuniary value of a deceased's life," which "does not create a new cause of action but merely refines the term 'pecuniary value'").

Thus, under *Ki* and *Kline* and the cases on which they rely, a wrongful death action in Tennessee is one indivisible right of action. The right of action in a wrongful death lawsuit is not a newly created one vested in the beneficiaries; rather, it is the same right of action that originated with the decedent.

Trinity argues that these cases and others demonstrate "decades" of caselaw and "over 100 years" of precedent in which courts have consistently found that a spouse who files a wrongful death action is acting only in a representative capacity "on behalf of" the decedent. To be sure, in different contexts, this Court has described a wrongful death action as one that is prosecuted "on behalf of" the decedent or has said that the right of action being asserted "belongs to" the decedent. *See, e.g.*, *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 529 (Tenn. 2008) ("It is well settled that a wrongful death action is a claim belonging to the decedent, not the decedent's beneficiaries."); *Ki*, 78 S.W.3d at 880 ("The decedent's survivors are only asserting the decedent's right of action on behalf of the decedent."); *Kline*, 69 S.W.3d at 207 (noting that the wrongful death statutes "prescribe the priority of those who may assert the action on behalf of the decedent and any other beneficiaries"); *Brown v. Selby*, 332 S.W.2d 166, 168 (Tenn. 1960) (noting that the right being prosecuted is that which could have been prosecuted by the decedent).

Certainly, in some sense, a wrongful death action is always prosecuted "on behalf of" the decedent, because the suit asserts a right of action that originally belonged to the decedent and would have continued to belong to the decedent had death not intervened. Nevertheless, recognition that the right of action asserted in a wrongful death lawsuit originated in the decedent does not equate to a holding that the surviving spouse is acting *as a legal representative* for the decedent. We must conclude that none of the cases cited by Trinity address the precise issue raised in this appeal, namely, whether a surviving spouse who files a wrongful death action is asserting his own claim or that of the decedent.

To resolve the question of whether the spouse files the wrongful death lawsuit in a representative capacity on behalf of the decedent, we return to the wrongful death statutes. The answer lies in the plain language of the statutes, specifically, Section 20-5-106(a). It provides:

> *The right of action* that a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not been ensued, shall not abate or be extinguished by the person's death but *shall pass to the person's surviving spouse* and, in case there is no surviving spouse, to the person's children or next of kin; [or] to the person's personal representative, for the benefit of the person's surviving

> spouse or next of kin; . . . the funds recovered . . . to be free from the claims of creditors.

Tenn. Code Ann. § 20-5-106(a) (emphases added). As can be seen, distilled to its essence, section 20-5-106(a) provides that "[t]he right of action" that the decedent "would have had against the wrongdoer . . . shall not abate . . . but shall pass to the person's surviving spouse." *Id*. Thus, under the statute's plain language, the decedent's right of action that, under the common law, would have extinguished upon his death instead *passes to the spouse*. The statute does not merely authorize the surviving spouse to file the wrongful death action on behalf of the decedent; it "passes" or transfers the right of action *to* the spouse. This indicates that, in filing a wrongful death lawsuit, the surviving spouse does not represent the decedent but instead asserts the spouse's own right of action.

Other aspects of the wrongful death statutes indicate that the surviving spouse who files a wrongful death complaint is not acting as a legal representative of the decedent. Generally, someone who represents another person in legal proceedings has no personal or pecuniary interest in the lawsuit; rather, the legal representative prosecutes the claims of the true plaintiff for the true plaintiff's benefit. In contrast, under the wrongful death statutes, the surviving spouse's lawsuit is for his *own* benefit. If there are other statutory beneficiaries, the surviving spouse's lawsuit is for their benefit as well. *Id*. § 20-5-110(a); *id.* § 20-5-106(a) (listing personal representative as one who can bring suit "for the benefit of the person's surviving spouse or next of kin"). Indeed, the proceeds of a wrongful death action go directly to the spouse and the other statutory beneficiaries, *Kline*, 69 S.W.3d at 202 n.3, and they pass free and clear of any claims of the decedent's creditors, *Anderson v. Anderson*, 366 S.W.2d 755, 756 (Tenn. 1963) (citing former Tenn. Code Ann. § 20-609, currently Tenn. Code Ann. § 20-5-108(b)). The proceeds never become part of the decedent's estate.[16] *Cooper*, 313 S.W.2d at 448 ("Neither the claim nor the recovery under this situation here becomes a part of the estate of deceased . . . ."); *Lawson v. Lawson*, No. M2009-00537-COA-R3-CV, 2010 WL 3853289, at *2 (Tenn. Ct.

---

[16] In *Kline*, the Court cited *Foster* for the proposition that "proceeds from a wrongful death action become personal property of the deceased." *Kline*, 69 S.W.3d at 202 n.3 (quoting *Foster*, 813 S.W.2d at 452). We clarify that the proceeds of the lawsuit do not *actually* become property of the decedent's estate. Rather, the proceeds are paid to the beneficiaries through the laws of intestate succession *as if* they were the personal property of an intestate decedent. They are not includable in the decedent's estate, and they are not subject to the claims of the decedent's creditors. *See, e.g.*, *Lawson v. Lawson*, No. M2009-00537-COA-R3-CV, 2010 WL 3853289, at *2 (Tenn. Ct. App. Sept. 28, 2010) (holding that voluntarily tendered insurance proceeds should be tendered in the wrongful death tort action, not included in the decedent's estate in the probate action); *Timmins v. Lindsey*, 310 S.W.3d 834, 840 (Tenn. Ct. App. 2009) (holding that settlement proceeds were part of the decedent's estate, not distributable under the wrongful death statutes, because the defendant's negligence did not result in the decedent's death).

App. Sept. 28, 2010) (holding that voluntarily tendered insurance proceeds should be tendered in the wrongful death tort action, not in probate, because "the damages assessed in the wrongful death case are not a part of the decedent's estate that pass by will but, instead, pass by statute to specified individuals"); *Holliman v. McGrew*, 343 S.W.3d 68, 73 (Tenn. Ct. App. 2009) ("In a wrongful death action, . . . neither the claim nor the recovery becomes a part of the estate of the deceased."). Even when the wrongful death right of action is prosecuted in the name of the decedent's personal representative rather than by the spouse or the other next of kin, the personal representative asserts the claim *on behalf of the beneficiaries*, not on behalf of the decedent or the decedent's estate.[17] *Johnson*, 665 S.W.2d at 718 ("While an action for wrongful death, of course, may be instituted and maintained by an administrator, . . . it has long been settled that the administrator sues as a representative of the next of kin, and not as a representative of the estate or of creditors."); *Cooper*, 313 S.W.2d at 448 ("[T]he personal representative as such has no interest in recovery but is only a medium for enforcing the rights of others.").

In sum, the language of section 20-5-106(a), read *in pari materia* with the other wrongful death statutes, does not support an interpretation that the surviving spouse brings a wrongful death action in a representative capacity on behalf of either the decedent or the decedent's estate. Rather, the statute's plain language indicates that, in a wrongful death lawsuit, the surviving spouse asserts his own right of action for his own benefit and for the benefit of the other statutory beneficiaries who share in any recovery.

We must conclude that Section 20-5-106 says what it means and means what it says, namely, that "[t]he right of action" that Mrs. Hartley would have had against the defendants but for her death "pass[ed] to" Mr. Hartley, her surviving spouse, for the benefit of Mr. Hartley and the decedent's next of kin. We hold, therefore, that in filing the initial *pro se* wrongful death lawsuit in this case, Mr. Hartley was not representing the legal interests of either the decedent or her estate.

### D. Whether Pro Se Complaint Is a Nullity

Finally, we must address whether the trial court was correct in denying Trinity's motion for summary judgment. The trial court determined that, although Mr. Hartley's *pro se* complaint was filed in a representative capacity on behalf of the decedent's children, it nevertheless was "partially proper" because Mr. Hartley was also representing

---

[17] Older versions of our wrongful death statutes allowed *only* the decedent's personal representative to prosecute the wrongful death action. *See* 1850 Tenn. Pub. Acts, ch. 58, *cited in Jordan*, 984 S.W.2d at 596 n.4. Even then, however, the action was specifically designed to benefit the decedent's widow or next of kin, not the decedent or the decedent's estate. *Id.* In this way, the statute is more like a pure wrongful death statute rather than a survival statute.

his own interests.  Because the filing of the complaint was "partially proper," the trial court held, the complaint was not a void *ab initio*,[18] i.e., a nullity, and any defect in the complaint could be cured by amendment.

Trinity's primary argument in this appeal is, of course, that Mr. Hartley's *pro se* wrongful death complaint was void *ab initio* because it was filed in a representative capacity on behalf of the decedent; our holding that that the complaint was not filed on behalf of the decedent is fatal to that argument.  In the alternative, Trinity argues that Mr. Hartley's complaint was filed in a representative capacity on behalf of *his children*, the passive statutory beneficiaries under the wrongful death statutes.  Based on this, Trinity claims, Mr. Hartley was engaged in the unauthorized practice of law when he filed the complaint, and any lawsuit filed by a person engaged in the unauthorized practice of law is always void *ab initio* and cannot be cured by amendment.  Therefore, Trinity argues, because Mr. Hartley's initial *pro se* complaint was a nullity, the amended complaint could not relate back to the filing of the initial one, so the trial court erred in denying its summary judgment motion based on expiration of the statute of limitations.

Respectfully, we cannot square Trinity's argument with the plain language of section 20-5-106(a), which provides that the wrongful death right of action "passes to" the surviving spouse for the benefit of the spouse and the other beneficiaries.  Our decision on this issue must be controlled by Tennessee's unique wrongful death statutes.  As we noted in our discussion of the previous issue, the decedent's surviving spouse has the "superior right above all others" to assert the right of action in a wrongful death lawsuit and to control the proceedings.  *Foster*, 813 S.W.2d at 451.  The surviving spouse may compromise the lawsuit and "execute a valid release that shall be binding upon all the children of the deceased or next of kin of the deceased."  Tenn. Code Ann. § 20-5-110(b); *Kline*, 69 S.W.3d at 207.

---

[18] A document that is void *ab initio* is of no legal effect; it is as though it never existed.  *See, e.g.*, *Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 277-78 (Tenn. 2015) (observing that a decree entered after tax sale that was conducted without notice to the owner is void, as if it never existed); *State v. Campbell*, 641 S.W.2d 890, 893 (Tenn. 1982) (noting that the criminal court had ruled that the warrant was void *ab initio* and "in effect, never existed"); *Cumberland Capital Corp. v. Patty*, 556 S.W.2d 516, 538 (Tenn. 1977) ("Under the 'void *ab initio*' approach the statute is given no effect and treated as though it never existed . . . .").  In contrast, if a document is merely defective or "voidable," the document is effective until the defect is cured or a successful challenge is waged against it.  *See, e.g.*, *Summers v. State*, 212 S.W.3d 251, 255-56 (Tenn. 2007) ("A voidable judgment is one that is facially valid and requires proof beyond the face of the record or judgment to establish its invalidity.").

The question we must decide is whether the entire *pro se* complaint is rendered void *ab initio,* a nullity, by the fact that other beneficiaries' interests are encompassed within the right of action asserted by the surviving spouse. We hold that it is not.

Trinity cites a number of wrongful death cases from other jurisdictions in support of its argument that a *pro se* wrongful death complaint that is filed on behalf of statutory beneficiaries should be declared void *ab initio*. These cases are unhelpful.[19] First and foremost, wrongful death actions are statutory, and Tennessee's wrongful death statutory scheme is *sui generis*, unlike the wrongful death statutory framework in any other state. *See Timmins v. Lindsey*, 310 S.W.3d 834, 842 (Tenn. Ct. App. 2009) (noting that our wrongful death statutes include "statutory provisions that are unique"). Second, virtually all of the cases cited by Trinity to support its argument involve a wrongful death lawsuit filed by an executor or personal representative of the decedent's estate, someone who by definition represents another person or entity. None were filed by a surviving spouse asserting his own right of action.

As we construe our wrongful death statutes, in filing the initial *pro se* complaint, Mr. Hartley was acting primarily on his own behalf pursuant to his right of self-representation. Essentially, we agree with the trial court's statement that "[t]he action, as filed, was partially proper." Under the facts of this case, then, we hold that the initial *pro se* complaint filed by Mr. Hartley was not a nullity. For this reason, the trial court did not err in permitting Mr. Hartley to amend the complaint to add counsel. Our holding is consistent with other cases in which our courts have regularly permitted liberal amendments to wrongful death complaints, particularly with respect to substituting party plaintiffs. *See Chapman*, 572 S.W.2d at 927-28. "No doubt the reason for this liberal

---

[19] The cases upon which Trinity relies are those that address whether a lawsuit filed in a representative capacity by someone unauthorized to practice law is a nullity. This Court has not ruled on whether a *pro se* complaint filed by someone unauthorized to practice law is a nullity or whether it is merely a defective complaint that can be cured by appropriate amendment. The parties agree that courts are split on this issue. *See Davenport v. Lee*, 72 S.W.3d 85, 93 (Ark. 2002) (noting a split of authority on the "nullity" issue in wrongful death cases); *see also Ex parte Ghafary*, 738 So. 2d 778, 780 (Ala. 1998); *Black v. Baptist Med. Ctr.*, 575 So. 2d 1087, 1088 (Ala. 1991); *Ratcliffe v. Apantaku*, 742 N.E.2d 843 (Ill. Ct. App. 2000); *Richardson v. Dodson*, 832 S.W.2d 888 (Ky. 1992); *Mikesic v. Trinity Lutheran Hosp.*, 980 S.W.2d 68, 70 (Mo. Ct. App. 1998); *Waite v. Carpenter*, 496 N.W.2d 1, 4-5 (Neb. Ct. App. 1992); *Steele v. McDonald*, 202 S.W.3d 926, 928 (Tex. Ct. App. 2006); *Kone v. Wilson*, 630 S.E.2d 744, 746 (Va. 2006). *But see Kasharian v. Wilentz*, 226 A.2d 437, 438-39 (N.J. Super. Ct. 1967); *Brown v. Coe*, 616 S.E.2d 705, 707-08 (S.C. 2005).

We need not address in this opinion whether Mr. Hartley was engaged in the unauthorized practice of law when he filed this lawsuit. Rather, we limit our holding to the conclusion that, even if the interests of the passive beneficiaries may be implicated in this lawsuit, Mr. Hartley's initial *pro se* complaint was not a nullity and it was curable by amendment.

policy in wrongful death cases has been the fact that the cause of action is not changed by the substitution of the proper party plaintiff for the improper plaintiff." *Id.* at 928; *see also Pratt-Holdampf v. Trinity Med. Ctr.*, 789 N.E.2d 882, 887 (Ill. Ct. App. 2003) (holding that a wrongful death action filed by a *pro se* plaintiff is not void *ab initio* because "the risks to individual clients and to the integrity of the legal system inherent in representation by a person who has never qualified to practice law are not present in the instant case"). Moreover, the defendants were notified of Mr. Hartley's claim in a timely manner, and they were not prejudiced in any way by Mr. Hartley's temporary lack of legal representation. *See, e.g.*, *Richardson v. Dodson*, 832 S.W.2d 888, 890 (Ky. 1992) (holding that *pro se* wrongful death complaint filed by the decedent's son was timely in light of the fact that the defendants were not prejudiced).

Accordingly, we hold that the *pro se* wrongful death complaint filed by Mr. Hartley was not a nullity, i.e., was not void *ab initio*, and that the trial court did not err in permitting amendment of the initial complaint or in permitting the amended complaint to relate back to the date of the initial complaint.[20] Accordingly, this lawsuit was not time-barred, and the trial court correctly denied Trinity's motion for summary judgment.

Trinity raised a number of other issues in the Court of Appeals that were pretermitted by that court's decision on the statute of limitations issue. Because we have reversed the Court of Appeals' conclusion on the statute of limitations issue, we remand the case to the Court of Appeals to address the issues that were properly raised but not decided by that court.

## CONCLUSION

Under the plain language of Tennessee's wrongful death statutes, the decedent's right of action "pass[es] to" the surviving spouse upon the decedent's death, and the surviving spouse is not acting as a legal representative of the decedent in filing the wrongful death action. Tenn. Code Ann. § 20-5-106(a) (2009 & Supp. 2016). In filing the *pro se* complaint, Mr. Hartley was acting to a large extent on his own behalf and for his own benefit, pursuant to his right of self-representation. For this reason, we hold that the initial *pro se* complaint was not void *ab initio*, it served to toll the statute of limitations, and trial court did not err in allowing the filing of the amended complaint to relate back to the date of the initial complaint.

---

[20] Trinity does not raise any additional challenge to the relation back of Mr. Hartley's complaint other than its claim that the complaint was void *ab initio*. Having rejected that sole argument, we conclude that the trial court did not err in determining that the amended complaint related back to the date of the initial one under Rule 15.03.

Accordingly, the decision of the Court of Appeals is reversed, the trial court's denial of the motion for summary judgment is affirmed, and the case is remanded to the Court of Appeals to address the other issues that were raised on appeal but not addressed by that court. Costs on appeal are to be taxed to Trinity Hospital, LLC, for which execution may issue, if necessary.

_____
HOLLY KIRBY, JUSTICE