IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2021

## ROBERT WELCH ET AL. v. CATHERINE WELCH ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 20C1889  Amanda Jane McClendon, Judge**

———————————————————

### No. M2021-00081-COA-R3-CV

———————————————————

Prior to his death, the decedent brought suit for personal injury and loss of consortium in the Circuit Court of Kanawha County, West Virginia against more than seventy defendants after being diagnosed with mesothelioma.  Ultimately, the parties in that matter reached a settlement. After informing the West Virginia court of the resolution of the matter, the case was closed by the court. Shortly thereafter, and prior to full disbursement of the settlement proceeds, the decedent died from mesothelioma.  Several of the decedent's heirs then brought the present action in Tennessee, seeking to have the settlement proceeds received pursuant to the West Virginia litigation characterized as wrongful death proceeds.  The trial court dismissed the heirs' action, and this appeal followed.  We affirm the trial court's dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and JOHN W. MCCLARTY, JJ., joined.

Kristen Vanderkooi, Nashville, Tennessee, for the appellants, Robert Welch, Kelly Welch, and Kim Stangenberg.

Michael P. Dolan and Daniel C. Paulus, Nashville, Tennessee, for the appellees, Catherine Welch and Elizabeth Watson.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Charles Welch ("Decedent") was diagnosed with mesothelioma[1] in July 2018.

---

[1]Mesothelioma is a form of cancer that is associated with asbestos exposure. James L. Stengel, *The*

Subsequently, Decedent obtained legal representation with the law firm Maune Raichle Hartley French & Mudd, LLC ("MRHF&M") and Antion McGree Law Group, PLLC to seek compensation as a result of his mesothelioma diagnosis. Decedent filed a complaint in the Circuit Court of Kanawha County, West Virginia on August 22, 2018[2] against numerous defendants.

Decedent ultimately reached a settlement agreement with the defendants. On June 20, 2019, the Circuit Court of Kanawha County entered an "Order Closing Cases/Withdraw as to Pro Hac Vice Admissions" (hereinafter referred to as "West Virginia Order"), stating that it had been "informed that the above captioned actions have been resolved[.]" Decedent later died on September 5, 2019, due to complications arising from mesothelioma. According to the record on appeal, prior to his death, Decedent had received several distributions from the settlement proceeds.

Following Decedent's death, litigation was initiated in the Davidson County Probate Court when Robert Welch, the son of Decedent, filed a "Petition to Probate the Intestate Estate of Charles Leonard Welch." Decedent's wife, Mrs. Welch, thereafter filed a petition in the probate court to "Admit Will to Probate." Both of these matters were consolidated. Decedent's will proffered by Mrs. Welch was admitted to probate, and she was appointed executrix of Decedent's estate. The probate court thereafter entered an order on December 10, 2019, certifying a will contest. The contestants to the will contest included Robert Welch and other children of Decedent (hereinafter collectively referred to as "Petitioners").

On August 26, 2020, Petitioners filed a petition for declaratory judgment in the Circuit Court for Davidson County (hereinafter referred to as the "trial court"), wherein they contended that they had property rights to Decedent's mesothelioma litigation settlement funds as compensation for Decedent's wrongful death. According to Petitioners, these funds should pass via intestate succession. In their request for relief, Petitioners asked the trial court to declare the mesothelioma litigation settlement funds as compensation for Decedent's wrongful death. In response, Mrs. Welch and Elizabeth Watson, daughter of Decedent (hereinafter collectively referred to as "Respondents"), filed a motion to dismiss Petitioners' action. In their motion, Respondents argued that, prior to his death, Decedent "fully and finally compromised and waived any and all claims relating to his wrongful death arising out of his lifetime exposure to mesothelioma" in the West Virginia case. As such, because Decedent had waived any future claims for wrongful death, Petitioners had "no basis to assert any derivative claims on his behalf."

As part of the probate litigation, Petitioners moved the probate court to compel production of settlement agreements in response to written discovery requests. Addressing

_Asbestos End-Game_, 62 N.Y.U. ANN. SURV. AM. L. 223, 227 (2006).
[2] Decedent and his wife, Catherine Welch, were both named as plaintiffs to the West Virginia action.

Petitioners' motion to compel, the probate court entered an order directing Mrs. Welch to produce, among other things, "redacted copies of the mesothelioma litigation settlement agreement documentation" for an *in camera* inspection by the court. In an order dated September 1, 2020, the probate court found that, based upon its review of the confidential settlement agreements,

> there has been a complete and universal or global release under the West Virginia action that was filed during the decedent's lifetime, including any possible future action for wrongful death. Further, this Court also finds that by having resolved the West Virginia action, not only were the personal injury and loss of consortium claims for [Decedent and Executrix] resolved, but [Executrix], in her capacity as Executrix of the Estate, as well as, anyone else that could step into her shoes, or any other heirs-at-law of the decedent, are contractually barred from filing suit for wrongful death against the 76 defendants in the West Virginia case.

By a memorandum opinion entered January 11, 2021, the trial court dismissed Petitioners' action. In its order, the trial court concluded that it did not "have the legal authority to classify any portion of the settlement proceeds as wrongful death proceeds" and that "[t]he parties to the settlement negotiations very clearly intended to foreclose upon any future wrong[ful] death funds related to the mesothelioma litigation." This appeal followed.

## ISSUE PRESENTED

Petitioners raise several issues for our review on appeal. We have consolidated these issues into a single issue, as follows:

Whether the trial court erred in dismissing Petitioners' action.

## DISCUSSION

Petitioners in this case sought a ruling from the trial court "that the [Decedent's] mesothelioma litigation settlement funds are compensation for wrongful death." Specifically, Petitioners contended that, as Decedent's beneficiaries, they would be entitled to a portion of the settlement proceeds if they were characterized as wrongful death proceeds[3] rather than as the proceeds of a personal injury settlement. In its order dismissing

---

[3] Indeed, "Tennessee's courts have consistently held that [wrongful death proceeds] pass to the statutory beneficiaries in accordance with the laws of intestate succession." *Beard v. Branson*, 528 S.W.3d 487, 499 (Tenn. 2017). Moreover, although a "decedent's surviving spouse is entitled to file the wrongful death action," a decedent's children are also entitled to share in the proceeds from a wrongful death action as "'passive' beneficiaries." *Spires v. Simpson*, 539 S.W.3d 134, 142 (Tenn. 2017) (citing *Beard*, 528 S.W.3d at 501).

Petitioners' action, the trial court, in part, found there to be no authority supporting Petitioners' attempted re-characterization of the settlement proceeds. As such, according to the trial court, there ultimately existed no basis under the law in which Petitioners could be compensated for Decedent's wrongful death. Thus, no viable claim existed, and dismissal was warranted.

We conclude that the trial court's dismissal of Petitioners' requested relief was proper. As we noted earlier, prior to the initiation of the present action, Decedent brought suit in West Virginia in connection with his mesothelioma diagnosis. As part of his complaint, Decedent made claims for personal injury and loss of consortium. Ultimately, Decedent reached a settlement with the defendants, as evidenced by the June 2019 West Virginia Order deeming the matter to be closed as the court had been informed that it had been "resolved." Decedent subsequently died in September of 2019 after having received several distributions of the settlement proceeds.

Although a decedent's children are entitled to share in proceeds from a wrongful death action pursuant to Tennessee law, *Spires*, 539 S.W.3d at 142 (citing *Beard*, 528 S.W.3d at 501), it is apparent from the record before us that there are no wrongful death proceeds in relation to Decedent. While Petitioners note that the purpose of their action was to ask the trial court "to rule on the characterization of the settlement proceeds as compensation for wrongful death [] because the settlement agreements waived any future wrongful death claims," we find no legal support for Petitioners' contentions regarding the settlement proceeds. As best as we can understand it, Petitioners predicate their position on the fact that (a) the West Virginia settlement was conditioned on waiver of future wrongful death claims and (b) in *United States Aviation Underwriters v. Selle*, No. M2004-02243-COA-R3-CV, 2006 WL 236914 (Tenn. Ct. App. Jan. 31, 2006), there was also a waiver of a wrongful death claim and this Court determined that the insurance proceeds in the case constituted wrongful death proceeds. However, as we will explain in more detail below, the respective contexts of the present matter and of *Selle* do not dictate identical treatment of the waivers involved. Rather, we find *Selle* inapposite to our discussion and ultimate disposition.

In *Selle*, the decedent was an employee of an insurance company and died while piloting a plane during the course of his employment. *Selle*, 2006 WL 236914, at *1. Incident to his employment, the decedent was covered under an insurance policy that included a voluntary settlement provision. *Id.* This provision provided up to $250,000.00 in coverage for claimants "who agreed to release or waive any and all liability claims, including wrongful death or survival actions" against the insurance provider or the decedent's employer. *Id.* Ultimately, a dispute arose between the decedent's mother and wife as to the proceeds from the voluntary settlement provision. *Id.* at *2. Specifically at issue was whether the proceeds would pass as part of the decedent's estate by the terms of his will, by intestate succession, or by Tennessee's wrongful death statute. *Id.* Part of the decedent's wife's argument contended that the policy proceeds constituted payment for the

- 4 -

decedent's wrongful death and should therefore pass under Tennessee's wrongful death statute. *Id.* On appeal, this Court affirmed the trial court's holding that the voluntary settlement provision proceeds constituted the settlement of a wrongful death claim and were to pass to the decedent's wife pursuant to the wrongful death statute. *Id.* at *8. Contrary to Petitioners' assertions, we do not find *Selle* dispositive of the facts in the present matter. Here, Decedent brought suit in West Virginia for personal injury and loss of consortium. Decedent himself ultimately accepted a settlement in lieu of further litigation. The monies received as part of Decedent's settlement in the West Virginia matter therefore represent compensation for his claims for personal injury and loss of consortium. Decedent was, obviously, still living at the time of his reaching a settlement in the West Virginia litigation. The monies awarded in *Selle*, however, represented compensation for the decedent's *death*. The insurance policy at issue therein granted the decedent's employer the option of offering a lump sum payment "in exchange for the waiver of any liability claims *by or for* the injured party." *Id.* This Court observed that the only action that could be brought against the decedent's employer for the decedent's death was a wrongful death claim and that, therefore, "the proceeds . . . would only be paid upon receipt of a waiver from the person having the right to prosecute a claim for wrongful death." *Id.*

The context of the "waiver" in the present set of facts is entirely different than that provided in *Selle*. Again, the West Virginia matter involved a settlement for personal injury and loss of consortium claims arising during Decedent's *lifetime*. The mere fact that these settlement proceeds resulted from injuries occurring while Decedent was still living reveals why these proceeds should *not* be treated as wrongful death proceeds. Decedent's death months *after* reaching his settlement does not warrant a recharacterization of the entire action. Indeed, by accepting the settlement, Decedent extinguished any right his heirs or beneficiaries would have to pursue a wrongful death claim pursuant to the plain language of section 55-7-5, West Virginia's wrongful death statute, which provides that:

> No action, however, shall be maintained by the personal representative of one who, not an infant, after injury, has compromised for such injury and accepted satisfaction therefor **previous to his death**.

W. Va. Code Ann. § 55-7-5 (emphasis added). As we perceive it, any potential cause of action for Decedent's wrongful death was extinguished when he resolved his personal injury case during his lifetime by way of settlement. Accordingly, Decedent's personal representatives, or beneficiaries, had no cause of action for his wrongful death because Decedent foreclosed on that opportunity in reaching a settlement. Petitioners' attempt to categorize Decedent's settlement proceeds as wrongful death proceeds simply ignores the plain realities of the West Virginia litigation and associated settlement.

In light of the above, we conclude that the trial court did not err in dismissing

Petitioners' action. [4]

**CONCLUSION**

Based on the foregoing, we affirm the trial court's order of dismissal.

_s/ Arnold B. Goldin_
ARNOLD B. GOLDIN, JUDGE

---

[4] To the extent we do not address certain arguments or issues raised in the briefs of the parties, they are pretermitted as unnecessary to our disposition. _Wheeler Bonding Co., Inc. v. 1st Stop Bonding LLC._, No. M2019-00064-COA-R3-CV, 2019 WL 6825971, at *4 (Tenn. Ct. App. Dec. 13, 2019).